REDD PEST CONTROL COMPANY, INC. *v.* HEATHERLY

No. 42774          November 4, 1963          157 So. 2d 133

*Mitchell, McNutt & Bush,* Tupelo; *William A. Bacon,* Jackson, for appellant.

36

*W. P. Mitchell, Jess B. Rogers,* Tupelo, for appellee.

GILLESPIE, J.

The complainant-appellant, Redd Pest Control Company, Inc., filed its original bill against defendant-appellee, Thomas L. Heatherly, in the Chancery Court of Lee County. An injunction was sought to prohibit Heatherly from engaging in the pest control business anywhere in the State of Mississippi in competition with Redd for a period of two years in accordance with the terms of an employment contract between the parties. The chancellor heard the case and declined to issue the injunction on the sole ground that the contract was unreasonable because the area in which Heatherly would be restricted by the terms of the contract was unreasonable. The chancellor found that in all other respects the contract between the parties was reasonable and lawful.

Heatherly had been working for Redd in and around Tupelo, Lee County, Mississippi, where he had lived all his life, for about two years when on February 5, 1960, Redd requested that Heatherly sign the contract involved in this suit. It was the policy of Redd to require all of its employees to sign non-competitive contracts, but through oversight Heatherly had either not signed a contract or it had been mislaid. Heatherly was told that he would be discharged if he did not sign the contract, and, according to his testimony, Heatherly

signed because he did not believe the contract was valid and he did not consider it "worth a nickel." On June 11, 1962, Heatherly was discharged for cause.

The pertinent parts of the contract are as follows:

"3. Said Redd agrees to teach and train said employee in the control of rats, vermin, roaches, ants, household pests, stored products pests, agricultural pests, and to further teach and train said employee in the treatment of properties and products for the control of said pests and in the conduct of its business methods as established by Redd.

"4. Said employee covenants and agrees that in the event of the termination of his employment by said Redd hereunder for any reason whatsoever, he will not for a period of two years from the date of such termination engage in, accept employment from, become affiliated or connected with, directly or indirectly, or become interested in, directly or indirectly, in any way in any business within the State of Mississippi similar or of a like nature to the business carried on by said Redd wherein said employee has been trained as hereinbefore set forth, the parties hereto recognizing irreparable damage will be done to said Redd thereby in the event of the breach of this covenant herein made by said employee, said covenant and the hereinbefore mentioned training being consideration for this contract. It is agreed that in such event Redd shall be entitled, in addition to any other remedies and damages available, to seek injunctive relief to restrain any violation hereof by said employee, his partners, agents, servants, employers and employees and all persons acting for or with him, and the said employee does further covenant and agree to save harmless said Redd from any and all liability arising from the invoking and/or resorting to this right.

"5. Said employee represents, acknowledges and admits that his experience and capabilities are such that

he can obtain employment in business other than that engaged in by said Redd and that he is fully capable of earning a livelihood independently of the pest control business and that his employment in or out of his knowledge of the pest control business is in no way essential to earning a livelihood and an enforcement of a remedy by way of injunction will not prevent him from earning a livelihood.''

Redd is engaged in the pest control business throughout the State of Mississippi and operates in every county. Heatherly had no experience in the pest control business prior to his employment by Redd. The pest control business is highly competitive and there are about fifteen firms whose services are available in the Tupelo area, and many such firms operate throughout the state. The chancellor found and the record shows without dispute that enforcement of the contract involved in this suit would not injure the public. Redd does considerable research in methods and means of controlling pests, and this information is promptly furnished its employees. Redd holds schools and seminars periodically for instruction of its employees to the end that they may better serve Redd's customers. The research done by Redd also enables it to better and more effectively serve its customers, but the chancellor found that no secret formula or trade secrets as such were imparted to Heatherly or Redd's other employees. Proof showed that basically all pest control firms use the same formulas and these formulas are generally known. Heatherly was trained by Redd in the pest control work and was furnished information and the know-how for best results in this work.

Heatherly worked in Tupelo and within a radius of fifty miles thereof as service man for Redd and had regular and close contact with Redd's customers whom he serviced. Heatherly established such close personal

relationship with Redd's customers that as far as the customers were concerned Heatherly was the firm.

Within three weeks after Heatherly was discharged by Redd, he entered into the employ of another firm engaged in the pest control business in competition with Redd and began soliciting Redd's customers whom Heatherly had theretofore serviced on behalf of Redd. This resulted in Redd losing many of its customers to Heatherly's new employer.

The chancellor found that Redd's loss of customers was due solely to the personal relationship between Heatherly and the customers serviced by him in Tupelo and within a fifty-mile radius thereof. Heatherly and all other employees of Redd are subject to transfer anywhere within the State of Mississippi although Heatherly had never been transferred except for a few days when he worked in the Columbus area.

The chancellor found for Redd on all issues of fact except that he found that Heatherly did not possess any secret formulas or other trade secrets, and held that it would be unreasonable to enjoin Heatherly from engaging in the pest control business throughout the State of Mississippi. If the restriction had been limited as to space to Tupelo and a fifty-mile radius thereof within the State of Mississippi, it would have been reasonable.

■■ ■ The first contention made by appellant is that the contract is enforceable throughout the State of Mississippi and that the provisions restricting competition throughout the State is not unreasonable. We are of the opinion that the chancellor was justified in finding that it would be unreasonable as to Heatherly to restrict him from engaging in the pest control business throughout the State of Mississippi for the reason that Heatherly possessed no information that would make his competition with Redd unfair except in the Tupelo area. In short, Redd did not need to be protected throughout

the State for the reason that if Heatherly entered into competition with Redd anywhere except the Tupelo area he would have no more advantage than any other competitor. Accordingly, we are unable to say that the chancellor erred in holding that it would be unreasonable to restrict Heatherly throughout the State.

■■ ■ The second question raised by appellant is whether an agreement restricting competition which is reasonable as to part of the territory described in the agreement but unreasonable as to the rest should be enforced as to the reasonable part. We hold that the agreement should be enforced as to the reasonable part of the area, and that the chancellor should have enjoined Heatherly from competition with Redd within the City of Tupelo and a fifty-mile radius thereof within the State of Mississippi.

There is a great contrariety of opinion on various aspects involving the enforceability of post employment restraints in employment contracts as to time, space, and activity. Anno., 41 A.L.R. 2d 15, 43 A.L.R. 2d 94. The precise question now under consideration has never been decided by this Court.

In 6A, Corbin on Contracts (1962), Sec. 1390, the author states that with respect to partial illegality, the real issue is whether partial enforcement is possible without injury to the public and without injustice to the parties themselves, and that such enforcement is quite possible in the great majority of cases. The author concludes that in the best considered modern cases the Courts have decreed enforcement against defendants whose breach occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement impose larger and unreasonable restraints. It is stated in Sec. 1660, Vol. 5., Williston on Contracts (Rev. Ed.), (1937), that the tendency of the late American cases has been toward the view that the legality of contracts in restraint of trade should not

turn upon the mere form of wording but rather upon the reasonableness of giving effect to the indivisible promise to the extent that it would be lawful.

The contract involved in this case involves post-employment restraint in the field of customer relationship. In the recent case of Frierson v. Sheppard Building & Supply Co., 154 So. 2d 151, we affirmed a decree forcing an employee from engaging in a competitive business. In that case the employer interest protected was largely that of customer relationship. The volume of cases involving employee restraints based on customer relationships indicates quite clearly that business enterprises recognize the desirability, even necessity, of protecting the business from loss of customers by the activities of former employees who have peculiar knowledge of and relationships with the employer's customers. In the case at bar the record shows, and the chancellor found, that the sole contact between Redd and many of its customers was through Heatherly. It is clear that by virtue of his employment Heatherly had a relationship with Redd's customers which bound the customer more closely to Heatherly than to Redd.

In passing on the ultimate question of unreasonableness of the contract, it is proper for the court to take into consideration the fact that Redd spent large sums of money over a period of time to establish the business and acquire the customers. Of course, absent a valid express contract, Redd has no protection from losing customers to former employees. Redd established a policy that all employees would be required to execute a restrictive contract as a condition for employment. The record shows that Redd operates throughout the State of Mississippi, and does more pest control business than any other operator within the State. Its employees are subject to transfer anywhere in the State. When the Court considers the reasonableness of the general purposes Redd sought to accomplish by requir-

ing its employees to execute such a contract, these significant facts should be taken into consideration; and it is our opinion that under the circumstances the inclusion of the entire State as the area of protection was not unreasonable except as it may relate to a particular employee, such as Heatherly. As noted in the chancellor's opinion, this same contract may be reasonable as to another employee.

██ █ Redd met the burden of proving that the contract is not unreasonable when applied to Tupelo and the area within fifty miles thereof within the State of Mississippi. There is no sound reason why the contract should not be enforced to the extent that it is reasonable since it protects a legitimate business interest.

For the reasons stated, the decree is affirmed in part and reversed in part and remanded for the entry of a decree enjoining Heatherly from engaging in the pest control business directly or indirectly in Tupelo and within a radius of fifty miles thereof within the State of Mississippi until June 11, 1964.

Affirmed in part, reversed in part, and remanded.

*McGehee, C. J., and Ethridge, McElroy and Brady, JJ.,* concur.