Chief Judge Fuld.
This appeal requires us to determine whether a covenant by a professional man not to compete with his employer is enforceable and, if it is, to what extent.
The plaintiff, Dr. Karpinski, an oral surgeon, had been carrying on his practice alone in Auburn—in Cayuga County—for many years. In 1953, he decided to expand and, since nearly all of an oral surgeon’s business stems from referrals, he embarked upon a plan to ‘‘ cultivate connections ’ ’ among dentists in the four nearby Counties of Tompkins, Seneca, Cortland and Ontario. The plan was successful, and by 1962 twenty per cent of his practice consisted of treating patients referred to him by dentists located in those counties. In that year, after a number of those dentists had told him that some of their patients found it difficult to travel from their homes to Auburn, the plaintiff decided to open a second office in centrally-located Ithaca. He began looking for an assistant and, in the course of his search, met the defendant, Dr. Ingrasci, who was just completing his training in oral surgery at the Buffalo General Hospital and was desirous of entering private practice. Dr. Ingrasci manifested an interest in becoming associated with Dr. Karpinski and, after a number of discussions, they reached an understanding; the defendant was to live in Ithaca, a locale with which he had no prior familiarity, and there work as an employee of the plaintiff.
A contract, reflecting the agreement, was signed by the defendant in June, 1962. It was for three years and, shortly after its execution, the defendant started working in the office which the plaintiff rented and fully equipped at his own expense. The provision of the contract with which we are concerned is a covenant by the defendant not to compete with the plaintiff. More *48 particularly, it recited that the defendant
‘[1] promises and covenants that while this agreement is in effect and forever thereafter, he will never practice dentistry and/or Oral Surgery in Cayuga, Cortland, Seneca, Tompkins or Ontario counties except: (a) In association with the [plaintiff] or (b) If the [plaintiff] terminates the agreement and employs another oral surgeon ”.
In addition, the defendant agreed, ‘1 in consideration of the * * # terms of employment, and of the experience gained while working with ’ ’ the plaintiff, to execute a $40,000 promissory note to the plaintiff, to become payable if the defendant left the plaintiff and practiced£ £ dentistry and/or Oral Surgery ’ ’ in the five enumerated counties.[1]
When the contract expired, the two men engaged in extended discussions as to the nature of their continued association — as employer and employee or as partners. Unable to reach an accord, the defendant, in February, 1968, left the plaintiff’s employ and opened his own office for the practice of oral surgery in Ithaca a week later. The dentists in the area thereupon began referring their patients to the defendant rather than to the plaintiff, and in two months the latter’s practice from the Ithaca area dwindled to almost nothing and he closed the office in that city. In point of fact, the record discloses that about 90% of the defendant’s present practice comes from referrals from dentists in the counties specified in the restrictive covenant, the very same dentists who had been referring patients to the plaintiff’s Ithaca office when the defendant was working there.[2]
The plaintiff, alleging a breach of the restrictive covenant, seeks not only an injunction to enforce it but also a judgment of $40,000 on the note. The Supreme Court, after a nonjury trial, decided in favor of the plaintiff and granted him both an injunction and damages as requested. On appeal, however, the Appellate Division reversed the resulting judgment and dismissed the complaint; it was that court’s view that the covenant was void *49 and unenforceable on the ground that its restriction against the practice of both dentistry and oral surgery was impermissibly broad.
There can be no doubt that the defendant violated the terms of the covenant when he opened his own office in Ithaca. But the mere fact of breach does not, in and of itself, resolve the case, jjpince there are ‘ ‘ powerful considerations of public policy which militate against sanctioning the loss of a man’s livelihood,” the courts will subject a covenant by an employee not to compete with his former employer to an “ overriding limitation of ‘ reasonableness ’ ”71 (Purchasing Assoc. v. Weitz, 13 N Y 2d 267, 272; see Millet v. Slocum, 5 N Y 2d 734, affg. 4 A D 2d 528; Lynch v. Bailey, 300 N. Y. 615, affg. 275 App. Div. 527; Interstate Tea Co. v. Alt, 271 N. Y. 76, 80; see, also, Note, An Employer’s Competitive Restraints on Former Employees, 17 Drake L. Rev. 69; Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625; Wetzel, Employment Contracts and Noncompetition Agreements, 1969 U. 111. L. F. 61.) Such covenants by physicians are, if reasonable in scope, generally given effect. (See Millet v. Slocum, 5 N Y 2d 734, affg. 4 A D 2d 528, supra; Foster v. White, 273 N. Y. 596, affg. 248 App. Div. 451; see, also, Ann., Restriction on Practice of Physician, 58 A. L. R. 156; 6A Corbin, Contracts [1962], § 1393.) “ It is a firmly established doctrine ”, it has been noted, ‘ ‘ that a member of one of the learned professions, upon becoming assistant to another member thereof, may, upon a sufficient consideration, bind himself not to engage in the practice of his profession upon the termination of his contract of employment, within a reasonable territorial extent, as such an agreement is not in restraint of trade or against public policy” (Ann., Restriction on Practice of Physician, 58 AJL. R. 156, 162).
^Each case must, of course, depend, to a great extent, upon its own facts?] It may well be that, in some instances, a restriction not to conduct a profession or a business in two counties or even in one, may exceed permissible limits. But, in the case before us, having in mind the character and size of the counties involved, the area restriction imposed is manifestly reasonable. The five small rural counties which it encompasses comprise the very area from which the plaintiff obtained his patients and in which the defendant would be in direct competition with him. Thus, *50 the covenant’s coverage coincides precisely with “ the territory over which the practice extends ”, and this is proper and permissible. (6A Corbin, Contracts [1962], § 1393, p. 87; see Interstate Tea Co. v. Alt, 271 N. Y. 76, 80, supra; see, also, Ann., Employees—Eestrictive Covenant—Area, 43 ALB 2d 94, 162.) In brief, the plaintiff made no attempt to extend his influence beyond the area from which he drew his patients, the defendant being perfectly free to practice as he chooses outside the five specified counties.
Nor may the covenant be declared invalid because it is unlimited as to time, forever restricting the defendant from competing with the plaintiff. It is settled that such a covenant will not be stricken merely because it ‘ ‘ contains no time limit or is expressly made unlimited as to time ”. (37 N. Y. Jur., Master and Servant, § 179, p. 60; see Diamond Match Co. v. Roeber, 106 N. Y. 473, 484; Goos v. Pennisi, 10 A D 2d 643, 644; Foster v. White, 248 App. Div. 451, 456, affd. 273 N. Y. 596, supra; see, also, Ann.— Employee—Eestrictive Covenant— Time, 41 ALE 2d 15, 35.) “ According to the weight of authority as applied to contracts by physicians, surgeons and others of kindred profession,” the court wrote in Foster (248 App. Div., at p. 456), “ relief for violation of these contracts will not be denied merely because the agreement is unlimited as to time, where as to area the restraint is limited and reasonable.” In the present case, the defendant opened an office in Ithaca, in competition with the plaintiff, just one week after his employment had come to an end. Under the circumstances presented, we thoroughly agree with the trial judge that it is clear that pearly all of the defendant’s practice was, and would be, directly attributable to his association with his former employer.
This brings us to the most troublesome part of the restriction imposed upon the defendant. By the terms of the contract, he agreed not to practice “dentistry and/or Oral Surgery” in competition with the plaintiff. Since the plaintiff practices only “oral surgery,” and it was for the practice of that limited type of “ dentistry” that he had employed the defendant, the Appellate Division concluded that the plaintiff went beyond permissible limits when he obtained from the defendant the covenant that he would not engage in any “ dentistry ” whatsoever. *51 [3] The restriction, as formulated, is, as the Appellate Division concluded, too broad; it is not reasonable for a man to be excluded from a profession for which he has been trained when he does not compete with his former employer by practicing it.
The plaintiff seeks to justify the breadth of the covenant by urging that, if it had restricted only the defendant’s practice of oral surgery and permitted him to practice “ dentistry ” — that is, to hold himself out as a dentist generally — the defendant would have been permitted, under the Education Law (§ 6601, subd. 3), to do all the work which an oral surgeon could. We have no sympathy with this argument; the plaintiff was not privileged to prevent the defendant from working in an area of dentistry in which he would not be in competition with him. The plaintiff would have all the protection he needs if the restriction were to be limited to the practice of oral surgery,, and this poses the question as to^the court’s power to “ sever ” the impermissible from the valid and uphold the covenant to the extent that it is reasonable.
Although we have found no decision in New York directly in point, cases in this court support the existence of such a power. (See, e.g., Purchasing Assoc. v. Weits, 13 N Y 2d 267, 272, supra; Carpenter & Hughes v. De Joseph, 10 N Y 2d 925, affg. 13 A D 2d 611; Interstate Tea Co. v. Alt, 271 N. Y. 76, 80, supra.) Moreover, a number of out-of-state decisions, and they are supported by authoritative texts and commentators, explicitly recognize the court’s power of severance and divisibility in order to sustain the covenant insofar as it is reasonable.[4] As Professor Blake put it (73 Harv. L. Rev., at pp. 674- *52 675), “If in balancing the equities the court decides that his [the employee’s] activity would fit within the scope of a reasonable prohibition, it is apt to make use of the tool of severance, paring an unreasonable restraint down to appropriate size and enforcing it.” In short, to cull from the Washington Supreme Court’s opinion in Wood v. May (73 Wn. 2d 307, 314), “we find it just and equitable to protect appellant [employer] by injunction to the extent necessary to accomplish the basic purpose of the contract insofar as such contract is reasonable.” Accordingly, since his practice is solely as an oral surgeon, the plaintiff gains all the injunctive protection to which he is entitled if effect be given only to that part of the covenant which prohibits the defendant from practicing oral surgery.
The question arises, however, whether injunctive relief is precluded by the fact that the defendant’s promissory note for $40,000 was to become payable if he breached the agreement not to compete. We believe not. The mere inclusion in a covenant of a liquidated damages provision does not automatically bar the grant of an injunction. (See Rubinstein v. Rubinstein, 23 N Y 2d 293, 298; Wirth & Hamid Fair Booking v. Wirth, 265 N. Y. 214, 224; Diamond Match Co. v. Roeber, 106 N. Y. 473, 486, supra; Foster v. White, 248 App. Div. 451, 457, affd. 273 N. Y. 596, supra; see, also, 5 Corbin, Contracts [1964], § 1071; Ann.-—-Restriction on Practice of Physician, 58 A. L. R. 156, 172-174.) As this court wrote in the Diamond Match Co. case (106 N. Y., at p. 486), “It is a question of intention, to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced.” The covenant under consideration in this case may not reasonably be read to render ‘ ‘ the liquidated damages provision * * * the sole remedy.” (Rubinstein v. Rubinstein, 23 N Y 2d 293, 298, supra.) On the other hand, it would be grossly unfair to *53 grant the plaintiff, in addition to an injunction, the full amount of damages ($40,000) which the parties apparently contemplated for a total breach of the covenant, since the injunction will halt any further violation. The proper approach is that taken in Wirth (265 N. Y. 214, supra). The court, there faced with a similar situation, granted the injunction sought and, instead of awarding the amount of liquidated damages specified, remitted the matter for determination of the actual damages suffered during the period of the breach.
The hardship necessarily imposed on the defendant must be borne by him in view of the plaintiff’s rightful interest in protecting the valuable practice of oral surgery which he built up over the course of many years. The defendant is, of course, privileged to practice “ dentistry ” generally in Ithaca or continue to practice “ oral surgery ” anywhere in the United States outside of the five small rural counties enumerated. { The covenant, part of a contract carefully negotiated with no indication of fraud or overbearing on either side, must be enforced, insofar as it reasonably and validly may^ according to its terms. In sum, then, the plaintiff is entitled to an injunction barring the defendant from practicing oral surgery in the five specified counties and to damages actually suffered by him in the period during which the defendant conducted such a practice in Ithaca after leaving the plaintiff’s employ.
The order appealed from should be reversed, with costs, and the case remitted to Supreme Court, Cayuga County, for further proceedings in accordance with this opinion.
Judges Sctleppi, Bergan, Breitel, Jasen and Gibson concur; Judge Burke taking no part.
Order reversed, etc.

. Either party was privileged to terminate the agreement on 60 days’ notice within the three-year period and, if the plaintiff were to do so, the contract recited, the defendant was released from the restrictive covenant and the note.

. There are two other oral surgeons, in addition to the plaintiff and the defendant, serving the Ithaca area.

. Some of the things a dentist may do, which a practitioner who limits himself to oral surgery is ethically prevented from doing include the filling of teeth, placing crowns on teeth, doing reconstruction work of the mouth, dentures, prophylaxis or straightening of the teeth.

. See, e.g., John Roane, Inc. v. Tweed, 33 Del. Ch. 4, 17; New England Tree Expert Co. v. Russell, 306 Mass. 504, 509; Redd Pest Control Co. v. Heatherly, 248 Miss. 34, 32; Welcome Wagon v. Pender, 255 N. C. 244, 248; Igoe v. Atlas Ready-Mix, 134 N. W. 2d 511, 515 [N. Dak.]; Wood v. May, 73 Wn. 2d 307, 313; Hommel Co. v. Fink, 115 W. Va. 686, 690; General Bronze Corp. v. Schmeling, 208 Wis. 565, 572; see, also, 6A Corbin, Contracts [1962], § 1390, pp. 74r-77; § 1394, p. 104; Restatement, Contracts, § 518; Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 674H375; Kreider, Restrictive *52 Employment Contracts, 35 U. Cinn. L. Rev. 16, 26-30; Note, An Employer’s Competitive Restraints on Former Employees, 17 Drake L. Rev. 69, 71; Comment, 41 FT. C. L. Rev. 253; Comment, 45 Wash. L. Rev. 210. Some of these authorities would only sever by applying the so-called “ blue pencil ” rule — that is, dividing the contract only when it is grammatically severable. Even this limited approach, however, would be sufficient in the case before us.